IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ADRIANA ORNELAS, as Administrator of the Estate of RODOLFO ROMO, Deceased, )<br><br>Plaintiff, )<br><br>vs. )<br><br>THE UNITED STATES OF AMERICA, )<br><br>Defendant, )<br><br>vs. )<br><br>TOTALL METAL RECYCLING, INC. )<br><br>Third-Party Defendant. ) | Civil No. 15-CV-00547-SMY-SCW |

### SUPPLEMENT TO TOTALL METAL RECYCLING, INC.'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Comes now third-party defendant/counterclaimant, Total Metal Recycling, Inc., (hereinafter, "TMR"), by and through its attorneys, Donovan Rose Nester, P.C., and for its Supplement to Totall Metal Recycling, Inc.'s Response in Opposition to Motion to Dismiss, hereby states as follows:

1. On or about June 23, 2016, defendant, The United States of America ("USA"), filed its Motion to Dismiss Contract Claims.

2. Thereafter, on or about July 28, 2016, TMR filed its Response in Opposition to Motion to Dismiss Contract Claims.

3. In said Response, TMR contended that this Court had proper subject matter jurisdiction over TMR's claim seeking a Declaratory Judgment with regard to the interpretation of



the Memorandum of Understanding between 916th Support Brigade and Totall Metal Recycling, Inc. ("MOU"). Indeed, TMR contended that this Court has subject matter jurisdiction over the pending Federal Tort Claims Act claims that are pending between the parties, and therefore, this Court has subject matter jurisdiction over TMR's claim seeking a Declaratory Judgment as to the interpretation of the MOU, the document that is of critical importance to the Federal Tort Claims Act issues presented to this Court. Issues pertaining to the interpretation of the MOU are inextricably interwoven with the Federal Tort Claims Act issues presented to this Court.

4. On July 29, 2016, subsequent to TMR's filing of its Response in Opposition to Motion to Dismiss, the USA tendered its expert witness disclosures, wherein it disclosed the report of Chester R. Razer, MS CSP CPM.

5. Said report discloses numerous opinions which rely on a purported interpretation of the MOU. For instance, Mr. Razer opines as follows:

> Dennis Meyer, Vice President of TMR, was or should have been knowledgeable of the terms and specifications of the MOU because he signed it. In doing so, he was or should have been aware of paragraph 6(h)(i) and paragraph 6(e) that clearly illustrate the materials may be dangerous or explosive. See Exhibit "A", page 3.

Moreover, the MOU is cited as a basis for Mr. Razer's opinions throughout his report. See Report of Chester A. Razer, MS CSP CPM, attached hereto as Exhibit "A".

6. Said report demonstrates that, consistent with TMR's Response in Opposition to Motion to Dismiss, this Court must interpret the MOU in the course of adjudicating the pending Federal Tort Claims Act issues over which the Court clearly has subject matter jurisdiction. Thus, this Court has subject matter jurisdiction to interpret the MOU in the context of the pending declaratory judgment.

7. Since the USA tendered the Report of Mr. Razer after TMR filed its Response in Opposition to Motion to Dismiss, TMR did not have an opportunity to apprise the Court of same upon the filing of its Response.

8. Accordingly, TMR submits the instant Supplement to its Response in Opposition to Motion to Dismiss.

WHEREFORE, third-party defendant/counterclaimant, Total Metal Recycling, Inc. respectfully requests that this Court deny the United States of America's Motion to Dismiss Contract Claims.

BY:_____
MICHAEL J. NESTER, #02037211
JASON M. GOURLEY, #6299897
Donovan Rose Nester, P.C.
201 South Illinois Street
Belleville, Illinois 62220
mnester@drnpc.com
jgourley@drnpc.com
Phone: (618) 212-6500
Fax: (618) 212-6501

**ATTORNEYS FOR DEFENDANT,
TOTALL METAL RECYCLING, INC.**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ADRIANA ORNELAS, as Administrator of the Estate of RODOLFO ROMO, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant,<br><br>vs.<br><br>TOTALL METAL RECYCLING, INC.<br><br>Third-Party Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil No. 15-CV-00547-SMY-SCW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

I hereby certify that on August ___, 2016, I electronically filed the foregoing document with the Clerk using the CM/ECF system which will send notification of such filings to the following:

Mr. Thomas Q. Keefe, Jr.
Keefe & Keefe, P.C.
#6 Executive Woods Court
Belleville, IL  62226
Isuedocs77@gmail.com
debbie@tqkeefe.com
**Attorney for Plaintiff**

Mr. W. Jeffrey Muskopf
Smith Amundsen LLC
120 S. Central Avenue, Suite 700
St. Louis, MO  63105
jmuskopf@salawus.com
jwoolsey@salawus.com
hshomaker@salawus.com

Mr. David J. Pfeffer
Mr. Adam E. Hanna
United States Attorney's Office
Nine Executive Drive
Fairview Heights, Illinois 62208-1344
David.J.Pfeffer@usdoj.gov
Adam.Hanna@usdoj.gov

BY _____
MICHAEL J. NESTER, #02037211
JASON M. GOURLEY, #6299897
Donovan Rose Nester, P.C.
201 South Illinois Street
Belleville, Illinois  62220
mnester@drnpc.com
jgourley@drnpc.com
Phone: (618) 212-6500;
Fax (618) 212-6500

**ATTORNEY FOR THIRD-PARTY DEFENDANT/COUNTERCLAIMANT TOTALL METAL RECYCLING, INC**

Razer Safety and Health Consulting LLC
Chester R. Razer, MS CSP CPM, Manager
PO Box 21, Columbia, IL  62236

Mr. Adam Hanna
Assistant U.S. Attorney
United States Attorney's Office – Southern District of Illinois
9 Executive Drive
Fairview Heights, IL  62208

Re:  Adriana Ornelas vs. The United States of America

Dear Mr. Hanna

I have reviewed the following case file records in the matter of Mr. Rodolfo Romo, deceased, as per your request.

Those records are:
- Pleadings
    - 01 – Complaint
    - 35-1 – Joint Report
    - 42 – Protective Order
    - 43 – TMR Counterclaim against USA
    - 43-1 – MOU
    - Granite City PD Photos (177)
- Discovery Materials
    - USA ATF Report of Interview
    - Granite City PD Report
    - Video Interview of Wanamaker
    - TMR 003512
    - TMR 003511
    - TMR 003509
    - TMR 003508
    - TMR 003486
    - TMR 003365
    - TMR 003358
    - TMR 003316
    - TMR 000742
    - TMR 000747
    - TMR 000703
    - TMR 000464
    - TMR 000156
    - TMR 000155
    - TMR 000127



EXHIBIT A

- o TMR 000113
- o TMR 000018
- Deposition of John Hobbs, ATF
- Deposition of Sgt. Andrew Drysdale
- OSHA Inspection Report
- Deposition of Lance Paszkiewicz
- The Occupational Safety and Health Act of 1970 (The Act)
- Deposition of Gabriel De Jesus Reyes
- Deposition of Patrick Feigenbutz
- Deposition of Cody Davis
- Deposition of Phillip Chatman

My opinions in the matter, and my reasons for them are as follows:
- TMR has an obligation defined by Section 5(a)(1) of The Act that states: "Each employer shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees".
- The Act is applicable with respect to TMR and its obligations to their employees as defined in Section 4(a).
- TMR is bound to comply with the health and safety standards developed and contained in Title 29, Code of Federal Regulations. This requirement resides in Section 5(a)(2) of The Act that states: "Each employer shall comply with the occupational safety and health standards promulgated under this Act".
- Lance Paszkiewicz affirms the following issues in his deposition that was taken on June 29, 2016:
    - o He is designated to answer questions on behalf of TMR (page 9, line 5).
    - o He is aware of the Memorandum of Understanding (MOU) between the 916th Support Brigade at Fort Irwin and TMR (page 10, line 1).
    - o He is the plant manager at TMR and has held that title for seventeen years (page 11, line 22).
    - o His duties include safety (page 15, line 18).
    - o Dennis Meyer was the Vice President of TMR in August 2014 and was the Vice President as of the date of this deposition (page 17, lines 14 and 16).
    - o Military scrap accounts for approximately 10 percent of TMR's business and is generally handled at location B-4 (page 30, line 16 & 25).
    - o Jeremy Zottarelle is TMS's Environmental Health and Safety Manager and has held that position since 2012 (page 42, line 23 and page 43, line 8).
    - o Zottarelle's duties include safety training (page 43, line 17 and page 44, line 14).

- - Zottarelle's duties included daily walk-throughs of the facility pointing out safety issues (page 45, lines 4 & 8).
  - Zottarelle conducts a variety of employee safety training but Paszkiewicz is unaware of the type and frequency (pages 45, 46 & 47).
  - TMR uses the services of a third party safety consultant or company known as "SSS" but Paszkiewicz is unable to specify the exact nature of their services (pages 49 & 50).
  - Zottarelle has a degree in safety (page 51, line 9).
  - Paszkiewicz has not had any training in handling or identification of explosive hazards prior to the explosion (page 55, line 22).
  - Prior to the explosion, TMR did not employ anyone with expertise to handle or identify explosive hazards relating to military scrap (page 74, line 6).
  - Prior to August 25, 2014, new employee training at TMR did not contain a discussion about unexploded ordnance otherwise knows as UXO (page 77, line 19).
  - TMR did not communicate to its employees that military-related scrap could inadvertently contain explosive material (page 80, line 6).
  - Rudy Romo was never provided with training or information regarding the potential for UXO or other explosives within military scrap at TMR's site (page 80, line 12).
  - Prior to the explosion, safety training involving safe operation of machinery, PPE, lifting hazards and other general safety concerns was provided (page 80, line 18).
  - If a hazard were communicated by a client of TMR the EHS supervisor would do a hazard analysis and develop a procedure (page 90, line 25).
  - Once a hazard was communicated to TMR a hazard assessment would have been done (page 92, line 20).
  - TMR's employees were aware, prior to the explosion; practice mortars were present on site (page 101, line 1).
  - Prior to the explosion, TMR employees whose job it was to receive materials were not trained to refuse materials that resembled mortars (page 116, line 25 and page 117, lines 1-13).
  - TMR received munitions material from sources other than the U.S. Military (page 190).
- Dennis Meyer, Vice President of TMR, was or should have been knowledgeable of the terms and specifications of the MOU because he signed it. In doing so, he was or should have been aware of paragraph 6(h)(i) and paragraph 6(e) that clearly illustrate the materials may be dangerous or explosive (document 43-1, page 5 & 7).
- In his video interview, Wanamaker stated Rodolpho Romo picked up what appeared to be a mortar, a silver missile with a blue ribbon, tapped it and it exploded. He also stated he had seen them (presumably mortar rounds) at the site and in a crate and there were more than ten of these items in the

crate. He also stated some of the items were dismantled in that the fins were separated from the body of the item. Wanamaker stated he believed the crate in question had been at the site for as long as he worked there which was about three and one half months. Wanamaker is a surviving eyewitness to the event.
- The investigative narrative written by OSHA states that TMR did not have a mobile DEMIL operation at Fort Irwin. This information was based on OSHA's interview with Dennis Meyer, who signed the MOU (page 153, paragraph 3 of the OSHA report).
- The OSHA narrative also cites employee interview information (redacted) that indicates TMR "had brought larger mortar shells into the facility in the past". (Page 155, paragraph 1 of the OSHA report).
- OSHA concluded the company's safety program had no training program to identify such items (page 155, paragraph 2 of the OSHA report).
- OSHA concluded and opined: "It is the opinion of this CSHO that the company had knowledge of past existences of scrap mortar shells at the facility, and did not ensure that employees were provided with the means to safety identity, store and handle such explosives." "The company demonstrated that no formal processes were set up to handle such scrap, or to identify locations of it, or to identify was it was to begin with".
- Gabriel De Jesus Reyes affirms the following issues in his deposition that was taken on June 2, 2016:
  - Rodolfo taught Reyes to inspect incoming shipments but only to the extent of looking for Freon, mixed trash, oils and tires. Reyes was never trained to look for explosive devices (page 16, lines 14-18).
  - It was not until after Rodolfo died, was he given a paper with a picture of explosives he should look for (page 16, line 19-22).
  - Prior to the explosion, Reyes was not trained in the detection of explosive materials in the scrap he was handling nor was he informed potentially explosive materials might be in the shipments (page 16, lines 23 – 25) and (Page 17, line 6).
  - Reyes was never made aware explosive materials might be on the TMR site (page 17, line 14).
  - Reyes was aware of the presence of the UXO that exploded on the TMR site for about one week before the explosion (page17, line 24).
  - Reyes has seen items similar to those he was shown in Exhibit 19 prior to the explosion (page 18, line 4).
  - Reyes was never trained how to handle or move the type of materials shown in Exhibit 19 (page 19, line 16).
  - Prior to the explosion, Reyes was not informed by anyone at TMR that explosive material might be inadvertently present within a military shipment (page 19, line 20).
  - It was not until after the explosion occurred that Reyes became aware of the possibility explosive materials could be on the TMR site (page 26, line 4).

- Patrick Feigenbutz affirms the following issues in his deposition that was taken on June 2, 2016:
    - There was no training given about proper action to take if he became aware or concerned a dangerous item might be on the work site (page 32, line 25).
    - Prior to the date of the explosion, was not given any training regarding the dangers of handling military scrap at the TMR site (page 33, line 20 and 23).
    - Was never told, prior to the explosion, that the site could potentially contain explosives that were dangerous and could result in death (page 36, line 25).
- Cody Davis affirms the following issues in his deposition that was taken on June 2, 2016:
    - Did not receive training from TMR addressing explosive safety or identifying potential explosives (page 13, line 8 and line 10).
    - Was a member of the safety committee and while on the committee the hazards related to explosive devices or military products were never discussed (page 14, lines 17 and 21).
    - Came into contact with items of a military nature (page, lines 6 and 7).
    - Was never told there was a possibility that explosives might be present in the military items shipped to TMR (page 17, line 16).
    - Saw one crate that contained what looked like "little missiles" (page 17, line 21).
- Phillip Chatman affirms the following issues in his deposition that was taken on May 24, 2016:
    - Was not warned there might be explosives on the TMR site (page 20, line 5).
    - Was aware there were military type items on site at TMR (page 20, line 19).
    - Was aware there may have been a "live" mortar round on site when he was engaged in a discussion with Tyler Muenstermann on the Friday prior to the explosion. Muenstermann found a mortar that Chatman believed was "live". There was no training or protocol developed to address this situation. As a result, no action was taken by either employee (pages 27 – 28).
    - Was never trained at TMR about UXO (page 52, line 11).
    - Doesn't remember ever receiving any handouts from TMR about UXO safety (page 52, line 16).

Summary of My Opinions:
- Based on the foregoing, in my opinion, a reasonable employer in the same or similar position as TMR would have trained its employees to properly identify and report potentially explosive items, including unexploded ordnance. TMR's failure to do so was a breach of its duty to its employees.

- More specifically, TMR had in its possession information indicating the items they received from Fort Irwin were potentially dangerous property that may be explosive. TMR was negligent when they did not comply with the General Duty Clause in the OSHA Act, Section 5(a)(1) which was to provide a safe workplace for its employees. The case of mortars that contained the live round that was detonated by Romo had been on the TMR site for at least three and one half months. OSHA concluded TMR had scrap other than spent shell casings at its facility and had no employee training or processes to safely manage those materials. TMR's conduct in this matter fell well below a reasonable standard of care for its employees. TMR's environmental safety manager makes frequent inspections of the work site. TMR's failure began at the point that they received shipments from Fort Irwin, in that, prior to the explosion, no employee was trained or instructed in a process to identify and or to refuse practice mortars or any other potentially explosive item. There is no testimony or documentation that indicates TMR's employees were trained to distinguish between practice mortars and live mortars. There is no testimony or documentation that indicates TMR trained its work force in a safe work procedure if they found any potentially dangerous military scrap. These facts are illustrated in Gabriel De Jesus Reyes deposition, in Patrick Feigenbutz's deposition, in Cody Davis' deposition and in Phillip Chatman's deposition. TMR completely failed to address the potential for employee exposure to explosives and as a result of this failure two TMR employees died.

My Opinions are based on the available information as of the date of this report. I reserve the right to modify or amend this report if additional information becomes available. I have no exhibits intended to summarize or support my opinions at this time.

My qualifications are summarized in my curriculum vitae that is enclosed with this letter. The Board of Certified Safety Professionals certifies me as a safety professional.

I have been deposed three times while practicing as a safety consultant. Those events are as follows:
- Personal Injury. Smith v. Ramsdale, Docket 12-L-537, In the Circuit Court Twentieth Judicial Circuit, St. Clair County Illinois
- Personal Injury representing Plaintiff. Peter Fitza, Plaintiff vs Kemper Valve & Fitting Corporation, Herron Construction Company, F B Industries, Inc., and Berger Excavating Contractors, Inc. In the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois. Docket 12-L-932
- Personal Injury representing Plaintiff. Rafael Mendoza, Plaintiff vs Monett Metals, Inc. and Carl Sheets d/b/a Shirley's General Maintenance Company. Case No. 14LW-CC00021 In the Circuit Court of Lawrence County, Missouri

I will be compensated at the rate of $175.00 per hour for file examination and preparation of testimony and $350.00 per hour for court testimony and depositions.


/s/ Chester R. Razer

Chester R. Razer MS CSP CPM
Manager
Razer Safety and Health Consulting LLC

# Chester R. Razer, MS CSP CPM

P.O. Box 158 Sparta, IL  62286
618.317.6927, FAX: 618.719.2399
razersafety@gmail.com
www.razersafetyandhealthconsulting.com
http://www.linkedin.com/in/razersafetyandhealth

## Professional Experience

**Manager,** RAZER SAFETY AND HEALTH CONSULTING LLC, Sparta, IL                                                                 May 2012 – Present
Competent in Health and Safety matters in Construction, General Industry, Mining and Maritime.

Specializing in the following areas:

- Providing expert witness testimony
- Evaluation of existing health and safety programs
- Development of new health and safety management systems
- Performing independent fatality/catastrophe and accident investigations
- Conducting independent, comprehensive safety and health inspections
- Providing representation during inspection events
- Providing citation abatement assistance
- Review of Accident Reporting and assistance in the application for the Voluntary Protection Program (VPP).
- On-site assistance to employers who have been targeted under OSHA's Severe Violators Enforcement Program (SVEP) and with employers who have received OSHA inspections categorized as "Significant".

Authorized by:

- OSHA Training Institute (OTI) to conduct 10-hour and 30-hour outreach training in construction, general industry, and maritime and to authorize the issuance of 10-hour and 30-hour training cards.
- Mine Safety and Health Administration (MSHA) to conduct Part 46 and Part 48 training and to issue 5000-23 training records.

**Area Director,** USDOL OSHA, DES MOINES, IA AREA OFFICE                                                                              Jun 2010 – May 2012

- Managed the inspection and compliance assistance activity of the Des Moines Iowa OSHA Area Office and conducted oversight of the State of Iowa OSHA, State Plans Program.
- Reviewed inspection reports generated by the Des Moines Area Office staff in construction, general industry, and maritime for issuance and possible litigation.
- Conducted Informal Settlement Agreements with employers or their representatives.
- Oversaw the activity necessary for the Des Moines OSHA Office successful entry into the Voluntary Protection Program (VPP) with subsequent recommendation for VPP Star Status to the National OSHA Office.
- Coordinated with Department of Labor solicitors to resolve contested cases.
- Carried out executive briefings, delivered speeches, provided compliance assistance, and coordinated the same with the State of Iowa OSHA.
- Managed the active alliances of the Des Moines Area OSHA Office.
- Participated as a team member of OSHA's Specialized Response Team, Structural Collapse Group, from its inception in 2003 until 2012. Trained and qualified in the Incident Command System (ICS).

**Supervisory Safety Engineer,** USDOL OSHA, ST. LOUIS, MO AREA OFFICE                                                       Apr 2007 – Jun 2010

- Oversaw the day-to-day inspection activity and associated training of a team of Industrial Hygienists and Safety Specialists.
- Managed the formal and field training of new Compliance Health and Safety Officers.
- Performed approximately 350 inspection case file reviews per year in preparation for issuance to employers or for litigation purposes.

# Chester R. Razer, MS CSP CPM | Page Two

- Supervised Compliance Officers engaged in the preparation of significant cases. Conducted informal settlement agreements of contested case files with employers or employer representatives to avoid litigation.
- Participated in Partnership inspections at the new Busch Stadium, Lumiere Hotel and Casino, I-40 Rebuild, St. Louis University Research Center, and the St. Louis University Arena.
- Directed the activities of the St. Louis Area Office during Area Director's absence.
- Served as principal point of contact for the Area Office move within the City of St. Louis in.
- Conducted on-site activities with OSHA's Specialized Response Team at the 2008 Republican National Convention in the Twin Cities.
- Headed executive briefings at the national office level.

**Compliance Safety and Health Officer,** USDOL OSHA, ST. LOUIS, MO AREA OFFICE                         Oct 2001 – Jun 2010

- Conducted Complete, Comprehensive, and Complaint Inspections at general industry and construction job sites, including logging and sawmills, within the St. Louis Area Office area of jurisdiction. Performed Fatality and Accident inspections within the same jurisdiction and completed six significant cases.
- Received training and qualified by OSHA to conduct criminal investigations.
- Developed outreach speeches and presented at engineering campuses within and outside the St. Louis Area Office jurisdiction. Presented safety and health outreach speeches at local conferences and participated on panel discussions. Received two *Champion of the Year* awards for exceptional achievement in Region VII OSHA.
- Acted as Region VII representative in "SONS 07", a combined joint tabletop exercise with the US Coast Guard and three OSHA Regions, which simulated a major inland waterway oil spill complicated by a magnitude 7 earthquake in the New Madrid Fault Region.
- Managed inspections 8 through 14 against a local St. Louis tuck point employer. Activity in this matter included the appointment of a Special Master of the Court, incarceration of the employer and his wife, special penalty provisions and ongoing OSHA oversight of the matter.
- Implemented OSHA initial response to Hurricane Katrina with the agency's Specialized Response Team and then continued to participate in OSHA's efforts in New Orleans for three more tours over the course of one year.
- Participated in two tours in OSHA's efforts to provide health and safety oversight at the World Trade Center immediately following the events of 9/11.

**Coal Mine Safety and Health Inspector,** USDOL MSHA, SPARTA, IL FIELD OFFICE                         Sep 1977 – Sep 2001

- Conducted comprehensive safety and health inspections in underground and surface coal, and metal/non-metal mines.
- Applied expert knowledge in the following areas:
  - Conventional mining systems, continuous mining systems, and longwall mining systems in underground coal mines.
  - Underground mine ventilation, roof control, dust control (explosive), electrical distribution, transportation, and haulage systems.
  - Surface mining systems, including truck shovel, auger, open pit (shovels and draglines up to 180 cubic yard capacity) and associated preparation plants.
  - Dust and noise exposure issues in mining environment.
  - Underground and Surface mine construction.
- Took part in mine rescue training, competitions, and actual events from 1981 until 2001 that included the *Kerr McGee Mine Thermal Event of 1996 -1997.* Conducted field operations as a Special Investigator within MSHA's Special Investigations group that conducts civil, criminal, and discrimination investigations.
- Participated on numerous National Office Committee assignments, including the agency's Reinvention effort in the mid-80s. Conducted executive briefings at the national office level. Received Secretary of Labor's Exceptional Achievement Award for participation on MSHA's Y2K committee.

**Mine Engineer/Safety Manager/Pit Foreman,** CONSOLIDATION COAL COMPANY                         May 1974 – Sep 1977

- Prepared Engineering drawings and range diagrams, designed haulage roads, and supervised construction of haulage roads and drainage structures needed to facilitate mining.
- Provided all engineering support activity for a large Southern Illinois surface mine. Supervised a survey crew.
- Promoted to shift production and reclamation foreman.
- Supervised overburden removal, coal haulage, and subsequent reclamation of disturbed ground. Addressed safety concerns of miners employed at the site.

# Chester R. Razer, MS CSP CPM | Page Three

**Military Service, United States Army**  Sep 1969 – Sep 1971

- Served in Vietnam – Service with the 18th Engineers in the Republic of South Vietnam, Sep 1970 – Sep 1971.
- Received Honorable Discharge, National Defense Service Medal, Vietnam Service Medal, Army Commendation Medal, Vietnam Campaign Medal, and One Overseas Bar.

## Licensure and Certifications

Current Passport, United States Department of State
Private Pilot, Federal Aviation Agency
Certified Safety Professional (CSP), Board of Certified Safety Professionals | 2005 to date
Certified Public Manager (CPM), Iowa Department of Administrative Services through Drake University
Authorized to conduct OSHA 10 and 30 hour Construction Training | 2012
Authorized to conduct OSHA 10 and 30 hour General Industry Training | 2012
Authorized to conduct OSHA 10 and 30 hour Maritime Training | 2012
Authorized to conduct MSHA Part 46/48 Miner Training | 2006
Authorized Powered Industrial Truck Trainer, National Safety Council | 2013
Authorized Trainer, Highway Work Zone Flagger, National Safety Council | 2014
Top Secret Security Clearance, US Department of Labor, Office of Personnel Management | 2004 – 2012

## Education

**Master of Science, Mining Engineering**, Southern Illinois University
**Bachelor of Science, Civil Engineering**, Southern Illinois University

## Author, Technical Papers

Thesis: *A Study of a Technique for Developing Effective Dust Control Plans*
Razer, Chester R. *An Assessment of Noise Levels in Continuous Mining Sections.* The Proceedings of the Midwest Mine Health and Safety Conference. Marion, 22-23 July 1992.
A.K. Sinha and C.R. Razer: *A Look at Occupational Safety and Health in Coal Mines* (Unpublished)

## Professional Affiliations

The Raymond Gothard Chapter of the Joseph A. Holmes Safety Association
The American Society of Safety Engineers (ASSE), Professional Member
The National Safety Council, Safety Council of Greater St. Louis