IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ADRIANA ORNELAS, as Administrator of the Estate of RODOLFO ROMO, Deceased, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Civil No. 15-CV-00547-SMY-SCW ) |
| THE UNITED STATES OF AMERICA, | ) ) |
| Defendant, | ) ) |
| vs. | ) ) |
| TOTALL METAL RECYCLING, INC., | ) ) |
| Third Party Defendant. | ) |

**<u>DEFENDANT UNITED STATES OF AMERICA'S TRIAL BRIEF</u>**

Defendant United States of America ("United States"), by and through its attorneys, Donald S. Boyce, United States Attorney for the Southern District of Illinois, and Assistant United States Attorneys David J. Pfeffer and Adam E. Hanna, submits the following trial brief to address contested legal issues in advance of trial:

**A. Overview of Factual Background and Anticipated Evidence.**

The intention of this trial brief is to detail the legal framework governing the negligence claims brought by Plaintiff and Totall Metal Recycling ("TMR") pursuant to the Federal Tort Claims Act ("FTCA").[1]  Additionally, this trial brief addresses several issues relevant to comparative fault to be apportioned between the parties, as well as the applicable damages law governing Plaintiff's wrongful death claim.

---

[1] The United States and TMR have separately briefed the issues pertaining to their contractual claims with respect to the United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction, as well as their cross-motions for summary judgment (*see* Docs. 52, 76, and 80).

1

The general factual background of this case is well-traversed in the various parties' motions for summary judgment and responses thereto. While several factual issues remain in dispute, the United States does not repeat those issues herein except as necessary to discuss the legal standards below. In short, Plaintiff and TMR allege that the United States negligently inspected munitions residue at the Ammunition Supply Point ("ASP") in Ft. Irwin, California. According to Plaintiff and TMR, the alleged negligence resulted in a live explosive being released to TMR's facility, where it exploded and killed Mr. Romo. The United States denies that any explosive device was released from the Ft. Irwin ASP, and likewise denies that any federal employee acted negligently. For further factual background of the relevant allegations and disputed factual issues, *see generally* Docs. 80, 90, & 91, and 110.

### B. The United States' Limited Waiver of Sovereign Immunity Under the FTCA

1. <u>The FTCA's waiver of sovereign immunity only extends to negligence claims.</u>

The FTCA, 28 U.S.C. § 2671, *et seq.*, is a limited waiver of sovereign immunity. *See Couch v. United States*, 694 F.3d 852, 856 (7th Cir. 2012). In order to establish liability under the FTCA, a plaintiff must prove that a federal employee—as opposed to a contractor or private entity—committed a negligent act or omission. 28 U.S.C. §§ 1346(b)(1), 2671. Generally, the United States is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. Even where the conduct involves "uniquely government functions," the plaintiff must identify the standard of care that would be applicable to an analogous private party rather than a heightened standard. *See United States v. Olson*, 546 U.S. 43, 46-47 (2005). Indeed, the FTCA only waives the United States' sovereign immunity as to tort liability in negligence; it does not extend to strict liability claims, including those involving ultrahazardous activities. *Laird v. Nelms*, 406 U.S. 797, 788-89 & 802-03 (1972).

Accordingly, a plaintiff must prove a negligence claim against the United States even if strict liability would ordinarily be available.

This principle was demonstrated in *Smith v. Pena*, when a driver, who had been served liquor at a facility operated by the Army, allegedly caused a crash which resulted in injuries to the plaintiffs. 621 F.2d 873, 875 (7th Cir. 1980). The plaintiffs filed suit against the United States under the FTCA, and pressed a cause of action under the Illinois Dram Shop Act. Ordinarily, the law would impose strict liability on a bar owner who overserves a patron if that intoxicated patron then causes personal injury. *Id.* Recognizing that the Dram Shop Act's strict liability scheme could not be directly applied to the United States under the FTCA, the Seventh Circuit held that plaintiffs could only pursue a claim by utilizing an analogous negligence standard provided under Illinois common law. *Id.* at 880-81. Therefore, even if state law would permit a strict liability cause of action for injuries caused by an inspection of munitions residue, such an action would not be within the waiver of sovereign immunity found in the FTCA. Plaintiff must prove the elements of negligence.

Moreover, the caselaw consistently requires some specific evidence of the government's negligence, including in those rare instances where an Army munition injured a civilian. For instance, in *Conlon v. United States*, 959 F.Supp. 683 (D. N.J. 1997), the district court assumed without deciding that an explosive device which killed a scrapyard employee was a military munition. *Id.* at 688. This, however, was not sufficient to create a finding that the United States was liable under the FTCA, as the evidence did not establish where the device came from, or how it arrived at the scrapyard. *Id.* Likewise, the evidence could not establish the United States maintained exclusive control over the item prior to its ultimate transfer. *Id.* at 688-89. As the

3

plaintiff failed to meet the burden of proof regarding the source, the court entered summary judgment for the United States.

Simply identifying that a U.S. military munition was the cause of the injury is thus insufficient; there must be some specific evidence regarding the actual negligent conduct as well as the identity of the relevant actors as federal employees. *Conlon*, 959 F.Supp. at 687-88 (collecting cases). As *Conlon* and the cases it relies upon make clear, a plaintiff must establish that a federal employee was negligent in order to prevail. *See id*. at 686-89.

2. The FTCA excludes liability for the negligent acts and omissions of contractors.

Because each military base employs different local procedures and maintains different contractors for ammunition management and inspection, Plaintiff must establish the facts demonstrating negligence in order to meet her burden of proof. Otherwise, the theory is too speculative to establish that a federal employee was the tortfeasor. It is soundly established that liability under the FTCA must be premised upon the negligence of a federal employee. 28 U.S.C. § 1346(b)(1) provides a limited waiver of sovereign immunity for tort actions alleging "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment…" An "employee of the Government" is defined in relevant part as "officers or employees of any federal agency, [and] members of the military or naval forces of the United States . . ." 28 U.S.C. § 2671. In turn, "federal agency" includes "the military departments . . . but does not include any contractor with the United States." *Id*.; *see also United States v. Orleans*, 425 U.S. 807, 814-16 (1976) (describing the contractor exclusion in the FTCA's waiver of sovereign immunity), discussing *Logue v. United States*, 412 U.S. 521 (1973) (same). Accordingly, the waiver of sovereign immunity expressly excludes liability for the negligent conduct of contractors.

4

The question of whether a person is an "employee of the Government" is a question of federal law. *Logue*, 412 U.S. at 528; *Quilico v. Kaplan*, 749 F.2d 480, 483 (7th Cir. 1984). The threshold issue in determining whether a contractor can be treated as a "federal agency" for purposes of the FTCA is whether the government has the authority "to control the detailed physical performance of the contractor." *Orleans*, 425 U.S. at 814 (quoting *Logue*, 412 U.S. at 528). Under this test, control cannot be established simply by pointing to voluminous regulations and contract provisions which the contractor must abide by. *Id.* at 812. Even the government's right to inspect the contractor's work is insufficient to establish the element of control. *Wright v. United States*, 404 F.2d 244, 247 (7th Cir. 1968) (stating that "in a situation where the Government reserves the right to inspect the work of an independent contractor, including the taking of proper safety precautions, and actually engages in such inspection, the Government does not assume the duty to provide safe working conditions."). Rather, it is well established that "the critical factor in making this determination is the authority of the principal to control the detailed physical performance of the contractor." *Logue*, 412 U.S. at 527-28.

While the United States denies that the explosive device originated from Ft. Irwin, evidence of the operations and procedures employed at Ft. Irwin reveal that a contractor, Northrop Grumman Enterprise Management Services, performed the relevant inspections, loading, and shipment processes at the Ft. Irwin ASP's residue yard. Accordingly, even if the Court ultimately concludes that Ft. Irwin was the source of the explosive device, the United States anticipates the evidence will be insufficient to establish that any federal employee was the source of the alleged negligence.

> 3. The FTCA requires the court to identify an analogous standard of care applicable to private parties under like circumstances.

In assessing negligence under the FTCA, the Court must determine the appropriate private party analogue to identify the governing standard of care. As referenced above, the FTCA provides that the United States is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. Even where the conduct involves "uniquely government functions," the plaintiff must identify the standard of care that would be applicable to an analogous private party in similar circumstances. *See Olson*, 546 U.S. at 46-47. "[T]he words 'like circumstances' do not restrict a court's inquiry to the *same circumstances*, but require it to look further afield." *Id*. (emphasis in original). Thus, *Olson* noted that the relevant standard for evaluating a mine inspection could draw from state law addressing such activities as cattle inspections, automobile title inspections, or airplane inspections. *Id*. at 47.

Likewise, in *Indian Towing Co. v. United States*, the claim involved the operation of a Coast Guard lighthouse, which plaintiff alleged was improperly maintained such that it failed to provide adequate warning. 350 U.S. 61, 62 (1955). The Supreme Court held that despite the fact that the lighthouse operation was uniquely governmental in some respects, the applicable standard of care is that of a private person "who undertakes to warn the public of danger and thereby induces reliance." *Id.* at 64-65. That common law standard required private "good Samaritans" to use reasonable care. *Id.* The Court held that this analogous standard of care applied under the FTCA regarding the United States' operation of the lighthouse. *Id.*

Moreover, the FTCA does not create a private right of action for the United States' alleged violation of a statute, regulation, or rule. It is well established that "the violation of a federal statute or regulation by government officials does not of itself create a cause of action under the FTCA." *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1157 (D.C. Cir. 1985). The FTCA is

6

intended to waive sovereign immunity to address state law torts, not enforce the government's statutory duties. *See Clark v. United States*, 326 F.3d 911, 914 (7th Cir. 2003). Thus, the element of duty cannot find its origin solely in a federal regulation or statute. *See Tindall v. United States*, 901 F.2d 53, 56, n.8 (5th Cir. 1990). Plaintiff and TMR must prove the same elements of negligence under the relevant state's tort law as required against a private party: duty, breach, and causation. *See Clifford v. Crop Prod. Servs., Inc.*, 627 F.3d 268, 271 (7th Cir. 2010).

In the context of uniquely governmental functions, there may not be a clear standard of care for private persons under similar circumstances. *Olson*, 546 U.S. at 46-47. Given that the handling and inspection of munitions residue prior to transfer is uniquely governmental, the court must identify a standard of care that applies to a suitable analogous range of activities in the private sector. Following the general analogies proposed by *Olson* and *Indian Towing*, the United States takes the position that the applicable standard of care must address a private person who undertakes an inspection or service affecting the safety of others.

It should be noted that Plaintiff's analysis, on the other hand, focuses upon cases applying a heightened standard of care involving the handling, storage, or use of explosives. Those cases involve circumstances where the tortfeasor knowingly handled or stored explosives in a negligent manner. It must be recognized, however, that the conduct alleged in the instant case is the inspection of inert munitions residue to identify any dangerous or noncompliant materials therein.[2]

---

[2] By way of example, the Seventh Circuit discussed the appropriate standard of care applicable for the storage of explosives in *Stewart v. United States*, 186 F.2d 627 (7th Cir. 1951). There, several boxes of grenades were stolen from a military installation by teenagers and two young boys were later injured by them. *Id.* at 628-29. The court found that Illinois law in effect at that time required explosives be handled with "a high degree of care and the use of the utmost precaution." *Id.* at 631. This case and others like it are distinguishable, because the allegations of negligence did not pertain to a faulty inspection of inert material, but rather addressed the storage and safeguarding of known explosives.

Specifically, the allegation is that the explosive device at issue was overlooked during an inspection of an outbound shipment of otherwise safe material. Accordingly, the standard of care identified in cases addressing the handling of known explosives is not adequately analogous to the instant matter. The Court should apply the standard of reasonable care which applies to private parties who undertake an inspection or service affecting the safety of others.

    4. <u>The Court should apply the substantive law of Illinois with respect to liability.</u>

In order to identify the proper standard of care for the analogous activity, the Court must next identify the appropriate body of state law from which to draw. The FTCA directs the court to apply substantive state law from "the place where the act or omission occurred." 28 U.S.C. §§ 1346(b)(1), 2674; *see also Murrey v. United States*, 73 F.3d 1448, 1453 (7th Cir. 1996). The Supreme Court has explained that FTCA cases which involve multistate activity should utilize the choice-of-law rules of the place where the act or omission occurred in order to select the rule of decision. *Richards v. United States*, 369 U.S. 1, 11 (1962). In determining whether Illinois or California substantive law applies, the Court must therefore apply California's choice-of-law analysis since the offending conduct is alleged to have occurred at Ft. Irwin.

California utilizes a "governmental interest analysis" which asks (a) whether the states' laws significantly differs, (b) if so, whether there are true conflicts of interest, and (c) to determine which state's interests would suffer more harm if its laws were not applied. *See CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010). The default rule is to apply the law of the forum state, with the burden on the proponent of the foreign law "to show that the foreign rule of decision will further the interests of that state." *Id*. Moreover, California's choice-of-law rules are applied issue by issue, such that different laws might apply to different issues in the case. *See Brown v. McDonnell Douglas Corp.*, 504 F.Supp. 514, 517 (N.D. Cal. 1980).

Under Illinois law, "one who undertakes, gratuitously or for consideration, to render services to another is subject to liability for bodily harm caused to the other by one's failure to exercise due care in the performance of the undertaking." *Wakulich v. Mraz*, 785 N.E.2d 843, 854 (Ill. 2003) (quoting *Rhodes v. Illinois Central Gulf R.R.*, 665 N.E.2d 1260, 1273 (Ill. 1996)). This approach finds its roots in Sections 323 and 324A of the Restatement (Second) of Torts, and has been adopted by Illinois courts in situations where a party conducts safety inspections of a workplace or project.

For instance, in a case involving the allegedly negligent inspection of brakes, the Illinois Appellate Court expressed a similar standard, describing it as "due care or 'such competence and skill as [one] possesses.'" *Lewis v. Chica Trucking, Inc.*, 948 N.E.2d 260, 271 (Ill. App. Ct. 2011). Construing the same sections of the Restatement pursuant to Florida law, the Illinois Supreme Court stated in *Nelson v. Union Wire Rope Corp.* that one who undertakes an inspection has "a duty to use due care, or . . . 'to exercise such competence and skill as (it) possesses.'" 199 N.E.2d 769, 779 (1964) (quoting Restatement (Second) of Torts, § 323(1) (1965)). The opinion went on to approvingly quote language suggesting that the appropriate standard of care under particular circumstances depends on the level of danger and what is required to procure safety. *Id.* at 783.

Notably, there appears to be no true conflict in the substantive negligence analysis as between California and Illinois. For instance, in *United Scottish Ins. v. United States*, the Ninth Circuit rejected the argument that regulations applicable to FAA inspections provide the standard of care under the FTCA. 614 F.2d 188 (9th Cir. 1979). Instead, the court indicated that § 323 and § 324A of the Restatement (Second) of Torts provide a standard of reasonable or ordinary care. *See id.* at 194-95. Like Illinois, California state courts have concluded § 323 and § 324A create a duty of ordinary care in a wide variety of contexts where inspections or other services are

9

performed for the protection of third persons. *See, e.g., FNS Mortgage Serv. Corp. v. Pac. Gen. Group, Inc.*, 24 Cal.App.4th 1564, 1572-73 (Cal. App. Ct. 1994) (applying § 324A); *Walnut Creek Aggregates Co. v. Testing Engineers, Inc.*, 248 Cal.App.2d 690, 694-95 (Cal. App. Ct. 1967) (collecting cases and citing § 323). *See also Dekens v. Underwriters Lab. Inc.*, 107 Cal.App.4th 1177, 1181-84 (Cal. App. Ct. 2003) (collecting cases addressing California's application of § 324A).

In the absence of a true conflict regarding the standard of care owed in a safety inspection, the governing choice of law standard thus defaults to the forum state, Illinois.[3] Accordingly, the Court should apply a duty of reasonable or ordinary care to the United States' conduct.

**C. Comparative Fault**

If the Court applies Illinois law to the negligence claims as anticipated, the comparative fault of the parties must be assessed and considered in any hypothetical award of damages. 735 ILCS 5/2-1116. The doctrine of comparative fault applies where "the plaintiff acts without the degree of care that a reasonably prudent person would have used for his safety under like circumstances, and that action is the proximate cause of his injuries." *Baez v. Target Corp.*, 80 F.Supp.3d 862, 869 (N.D. Ill. 2015). If the degree of a plaintiff's fault exceeds fifty percent, no recovery may be had. 735 ILCS 5/2-1116(c). If a plaintiff's fault is less than fifty percent, the plaintiff's damages are reduced proportionately. *Id.* Alternatively, California law applies a rule of comparative fault that reduces a plaintiff's recovery "in proportion to the amount of negligence attributable to the person recovering." *Li v. Yellow Cab Co.*, 532 P.2d 1226, 1243 (Cal. 1975).

---

[3] As noted below, however, Illinois and California do differ as to the recoverable damages in wrongful death cases. With respect to the damages analysis, the United States takes the position that California law should apply.

This issue is relevant here, because the United States expects to produce testimonial evidence at trial that Mr. Romo had notice of a potential explosive hazard, yet nonetheless handled the suspect materials and applied the force which caused the detonation. A co-worker, Philip Chatman, is expected to testify that, on the Friday before the explosion, he informed Tyler Muenstermann of a potential explosive hazard in the relevant location. Mr. Muenstermann indicated he would inform a supervisor, and the following Monday morning, he and Mr. Romo (his supervisor) stood in that same location. While the details of their conversation is unknown, it can be reasonably inferred that they were discussing Mr. Chatman's concern. Eyewitness Donald Wanamaker is expected to testify that Mr. Romo picked up one of the items in the crate and struck the contents several times, producing metallic "ting" noises followed by the explosion.

Likewise, the United States anticipates presenting evidence that TMR had reasonable notice that munitions-related scrap in its possession might contain dangerous items, including explosive hazards. Despite said notice, however, evidence will be presented that TMR failed to take reasonable precautions to address that risk, such as informing its employees or providing training regarding the risk. Accordingly, the Court will be presented with evidence of comparative fault with respect to Plaintiff and TMR's negligence claims, by which to proportionately assess the parties' liability.

### D. Applicable Damages Law

In the event that the Court opts to reach the question of damages with respect to Plaintiff's wrongful death claim, it should apply the damages law of California. As noted above, California's choice-of-law rules are applied issue by issue, such that different laws might apply to different issues in the case. *See Brown*, 504 F.Supp. at 517. California's "governmental interest analysis" provides that, by default, the law of the forum state will apply, with the burden on the proponent

11

of the foreign law "to show that the foreign rule of decision will further the interests of that state." *CRS Recovery, Inc.*, 600 F.3d at 1142. That inquiry asks (a) whether the states' laws significantly differ, (b) if so, whether there are conflicts of interest, and (c) which state's interests would suffer more harm if its laws were not applied. *Id*.

In the event that any damages are awarded to Plaintiff in this case, it is critical to recognize the distinction between the damages awardable for wrongful death claims in Illinois and California. Specifically, Illinois and California differ on the question of whether damages may be awarded for grief and sorrow in a wrongful death action. While both states allow recovery for loss-of-society damages, Illinois allows the next of kin to recover damages for grief and sorrow, whereas California does not. *Compare* 740 ILCS 180/2 *with Krouse v. Graham*, 562 P.2d 1022, 1026 (Cal. 1977). Given the direct conflict on whether grief-based damages can be awarded, the question is whether California or Illinois would suffer more harm if its laws were not applied.

As the alleged negligent acts occurred in California, it is California's interests which would be most damaged if Illinois law were applied. California's legislature has devised a damages scheme which is intended to regulate conduct in California—not Illinois. In doing so, California courts have long recognized the impropriety of awarding damages for grief, due to the risk of "extravagant verdicts" which are prejudicial or even punitive. *See Krouse*, 562 P.2d at 1025-26 (collecting cases and their rationale); *see also id*. at 1028-29 (similarly addressing the prejudicial risks of such awards).

While recognizing that any damages would compensate for harm that occurred in Illinois, the cause of action arose based upon conduct that allegedly occurred in California. The effects of damages awards are clearly felt in both jurisdictions—where the alleged tortfeasor is located as well as where the decedent lived. The policy considerations related to wrongful death damages

that apply to conduct performed in California would be undermined if damages for grief and sorrow were permitted. Conversely, Illinois' interests would not be significantly harmed by the application of California law, as California's damages law still ensures a just recovery for nonpecuniary damages. For these reasons, California's damages law should apply as its interests would suffer more harm if California-based conduct was subject to Illinois' application of damages for grief and sorrow.

    Respectfully submitted,

    **DONALD S. BOYCE**
    **United States Attorney**

    __*s/ David J. Pfeffer*__
    **DAVID J. PFEFFER**
    **ADAM E. HANNA**
    Assistant United States Attorneys
    Nine Executive Drive
    Fairview Heights, Illinois 62208-1344
    Phone: (618) 628-3700
    Fax: (618) 622-3810
    Email: David.J.Pfeffer@usdoj.gov
           Adam.Hanna@usdoj.gov

    Attorneys for Defendant United States of America

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 27, 2016, he filed a copy of the foregoing

**DEFENDANT UNITED STATES OF AMERICA'S TRIAL BRIEF**

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

**THOMAS Q. KEEFE, JR.**
**KELLY T. CROSBY**
Keefe, Keefe, & Unsell, PC
6 Executive Woods Ct.
Belleville, IL 62226
Debbie@tqkeefe.com
Kelly@tqkeefe.com

*Attorneys for Plaintiff*

**MICHAEL J. NESTER**
**JASON M. GOURLEY**
Donovan Rose Nester, PC
201 South Illinois Street
Belleville, Illinois 6220
mnester@drnpc.com
jgourley@drnpc.com

*Attorneys for Totall Metal Recycling*

**W. JEFFREY MUSKOPF**
**ANDREW C. SEIBER**
**DEAN HENKE**
SmithAmundsen, LLC
120 S. Central Ave., Ste. 700
St. Louis, MO 63105
jmuskopf@salawus.com
aseiber@salawus.com
dhenke@salawus.com

*Attorneys for Totall Metal Recycling*

            ___*s/ David J. Pfeffer*_____